

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2005

# Shoukat v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4505

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Shoukat v. Atty Gen USA" (2005). *2005 Decisions.* Paper 456.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/456

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4505
_____

MAHMOOD KHAN SHOUKAT,

Petitioner,

v.

Attorney General of the United States,

Respondent.

_____

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(No. A73 646 445)

_____

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2005

BEFORE:  ALITO, AMBRO, and LOURIE,[*] Circuit Judges.

(filed: October 3, 2005 )

_____

OPINION

_____

---

[*]  Honorable Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by designation.

LOURIE, Circuit Judge:

Mahmood Khan Shoukat, a citizen of Pakistan, petitions for review of the March 14, 2003 decision of the Board of Immigration Appeals ("BIA") that affirmed, without opinion, the decision of an Immigration Judge ("IJ") denying Shoukat's application for asylum, withholding of removal, and protection pursuant to the Convention Against Torture. For the reasons given below, we deny Shoukat's petition for review.

BACKGROUND

Petitioner is a native and citizen of Pakistan, but was raised and schooled in Nigeria from 1975 to 1988. After completing his post-graduate studies, Shoukat returned to Pakistan in 1988. In 1989, Shoukat joined the Pakistan Muslim League ("PML"), one of Pakistan's major political parties. As a member of the PML, Shoukat was purportedly assigned the position of publicity secretary, which entailed editing political flyers and organizing meetings. According to Shoukat, the PML was in power from 1989 to 1993. Sometime in 1993, however, a rival political party, the Pakistan People's Party ("PPP"), won election and came into power. Before the IJ, Shoukat testified that soon after the election the police arrested him and, while in their custody, he was tortured daily because of his prior political activities as a member of the PML. After eighteen days in custody, Shoukat testified that he was released. Soon after his release, Shoukat testified that he left Pakistan for Nigeria out of concern for his safety. While in Nigeria, Shoukat purportedly obtained a United States visa and arrived here on July 14, 1993. Shoukat also testified that he temporarily left the

2

United States to visit an uncle in South Korea, but returned to the United States on December 29, 1993, and has remained here since that time.

On or about September 24, 1994, Shoukat applied for asylum, withholding of removal, and protection pursuant to the Convention Against Torture at the Immigration and Naturalization Service ("INS").[1] To support his applications, Shoukat claimed that he would be persecuted if returned to Pakistan because of his membership in the PML and for opposing the policies of the PPP while that group was in power. On March 19, 1998, the asylum officer declined to grant Shoukat's applications even though he found that Shoukat was a refugee. According to the officer, the evidence indicated that Shoukat was a refugee because he was "persecuted in the past on account of a protected characteristic in the refugee definition." The officer concluded, however, that the evidence also established that conditions in Pakistan had changed to such an extent that Shoukat's fears of persecution were not well-founded and, in any event, that the threat of persecution did not exist country-wide.

Unsuccessful before the asylum officer, Shoukat presented his applications for asylum, withholding of removal, and protection pursuant to the Convention Against Torture to the Immigration Court. A hearing was conducted on April 9, 2001, and, on the next day, the IJ issued an opinion denying Shoukat's applications. In particular, the IJ concluded that Shoukat was not a refugee, and determined that Shoukat's sole motivation for seeking asylum

---

[1] On March 1, 2003, the INS ceased to exist as an agency, and its functions were transferred to the Department of Homeland Security ("DHS").

3

in the United States was "to obtain employment and make a better living." In reaching his decision, the IJ made several factual findings, including that there was a lack of evidence corroborating the injuries that Shoukat purportedly incurred from torture, suspicious circumstances surrounding Shoukat's procurement of travel visas for three different countries in 1993, the return to political power of the PML after Shoukat's departure from Pakistan, and a lack of credibility of Shoukat's "First Information Report" (INS Form I-589) alleging the issuance of a foreign arrest warrant by the PPP.

Shoukat appealed to the BIA, which affirmed the IJ's decision without issuing a separate opinion. Thus, pursuant to 8 C.F.R. § 3.1(a)(7)(iii), we review the IJ's decision. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Shoukat timely appealed to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1252.

## DISCUSSION

The Attorney General has the discretion to grant asylum to an alien who is a "refugee" under 8 U.S.C. § 1158(b). To qualify for refugee status, the applicant may demonstrate that he or she is "unable or unwilling" to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1999). An applicant bears the burden of proving eligibility for asylum based on specific facts and credible testimony. Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001); 8 C.F.R. § 208.13(a) (2005). Once the applicant establishes his or her status as a refugee, the burden

4

of proof shifts, and the government must prove that one or more of the various exceptions to the presumption of fear of future persecution exists. 8 C.F.R. § 208.13(b) (2005).

On appeal, Shoukat requests that we remand this case to the Immigration Court because, he asserts, the IJ erred in not properly considering the asylum officer's determination that Shoukat was a refugee. According to Shoukat, the officer's determination that he was a refugee was "at least entitled to a modicum of deference" by the IJ. Moreover, Shoukat asserts that, while the regulation provides that "[w]hen an Immigration Judge has jurisdiction over an underlying proceeding, sole jurisdiction over applications for asylum shall lie with the Immigration Judge," id. § 1003.14(b), it is unclear whether the IJ is bound by prior determinations of the asylum officer. But Shoukat contends that some deference is owed the asylum officer since he, like the IJ, has the authority to approve, deny, refer, or dismiss an application for asylum. Id. §§ 1208.13, 1208.14.

We disagree that the IJ owes any deference to the asylum officer's initial determination of Shoukat's refugee status. As a preliminary matter, we note that Shoukat provides no statute or case law supporting his position. Moreover, several distinctions between an interview with an asylum officer and a proceeding before the Immigration Court lead us to conclude that the IJ owes no deference to the asylum officer's determination. First, unlike an asylum officer who is an employee of the INS (now the DHS), an IJ is independent of the INS. See Marincas v. Lewis, 92 F.3d 195, 199 (3d Cir. 1996); 8 C.F.R. § 1003.0 (2005). Requiring the IJ to give deference to an asylum officer's initial determinations would

5

undermine the purpose of making the IJ independent of the INS.

Another distinction is that the interview with an asylum officer is nonadversarial. 8 C.F.R. § 208.9(b) (2005). The proceeding before an IJ, however, is adversarial, and an asylum applicant is afforded several significant procedural rights, including the right to be represented by counsel, having the proceedings on the record, and having the opportunity to present evidence and cross-examine witnesses. Rafeedie v. INS, 880 F.2d 506, 507-08 (D.C. Cir. 1989); see also Marincas, 92 F.3d at 200 (stating that "aliens are entitled to an adversarial asylum hearing before a neutral immigration judge with a full panoply of due process safeguards"); 8 U.S.C. §§ 1229, 1229a (1999); 8 C.F.R. Part 1003. Given the greater procedural protections and thoroughness of investigation provided to an asylum applicant in a proceeding before the Immigration Court compared with an interview with an asylum officer, we will not require the IJ to give deference to any of the asylum officer's initial determinations. No doubt, if the asylum officer had determined that Shoukat was not a refugee, we would not have expected Shoukat to concede that deference should still be given to that determination. The lack of deference works both ways.

Moreover, as the government argues, pertinent regulation and agency practice further support our conclusion that an IJ should not give deference to the asylum officer's initial determination of refugee status. For example, under 8 C.F.R. § 1003.42(d), when an asylum officer determines that an applicant has failed to demonstrate that he is a refugee with a

6

credible fear of future prosecution, the IJ reviews that finding <u>de novo</u>.[5] It would be inconsistent for the IJ not to be given <u>de novo</u> review over a positive determination of the asylum officer when he is given <u>de novo</u> review over a negative determination. Finally, the decision of the asylum officer was issued on a form stating that "[t]he determinations that [the INS has] made in referring your application are not binding on the immigration judge, who will evaluate your claim anew." Clearly the agency itself does not believe the IJ owes any deference to an asylum officer's initial determination of refugee status. Nor do we, and we so hold. The IJ conducts a <u>de novo</u> review of an asylum officer's determination without deference to any prior determinations of that officer. Since Shoukat has raised no other issues on appeal, we deny his petition for review.

## CONCLUSION

For the foregoing reasons, Shoukat's petition for review of the decision of the BIA is denied.

---

[5] That Section 1003.42(d) applies to an asylum officer in expedited removal proceedings does not affect the force of our analysis.

7